### William McKee v. Horace W. Cowles.

1. CONSTRUCTION OF CONTRACTS — *Equity Jurisdiction.*—A court should not refine away the plain and obvious meaning of what is expressed in a written instrument in order merely to gratify its sense of what would have been a more equitable agreement between the parties.

**Bill to Settle a Partnership.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed June 3, 1895.

GEORGE BURRY, attorney for appellant.

W. B. WILSON and H. H. ROSE, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The parties to this cause became partners, and entered upon the partnership business, by the firm name of Cowles & McKee, of buying and selling and cleaning and storing grain, etc., under written articles of copartnership, dated May 1, 1888.

Cowles contributed $10,000 in cash, and the good will of the grain and brokerage business then being carried on by him, and McKee contributed a grain elevator and its appliances, with a leasehold interest in the land upon which it stood, then being operated by him.

By the terms of the articles the partnership was to continue " until the thirtieth day after one of the parties hereto shall serve on the other written notice of a desire to terminate the relation."

The articles also contained the following provision:

" The property contributed by McKee shall be kept as nearly as can be in as good condition as at present, and if any of it is lost, worn out, or destroyed, shall be replaced at the expense of the firm, and in case of the termination of this partnership within —— years, shall be taken and received by McKee at the agreed price of ten thousand dollars."

' The lease of the land on which the elevator stood ran until March 1, 1893.

On January 9, 1892, the elevator was destroyed by fire. Some articles of personal property pertaining to it, of the aggregate value of $800, constituted the only salvage. The elevator was insured, and $4,943.98 insurance money was collected.

It is not disputed but that the elevator and its appliances when contributed to the partnership were worth $10,000, and were put in at that sum.

' After the fire, some arrangements were made by the parties to build an elevator in another location, it being impossible to get a new lease of the premises theretofore occupied, and it having but little more than a year to run, but before

such plans had matured a difference arose between them over the construction to be given to that clause in the articles relating to the taking back by McKee of what was left from the fire, of the property he had contributed, together with the insurance money, at the sum of $10,000. Cowles contended that McKee should do so, and McKee contended to the contrary, and such difference becoming irreconcilable, McKee stated to Cowles and his attorney that he would terminate the partnership at once. It was then agreed that the thirty days notice required by the articles of partnership should be waived, and an immediate dissolution be had.

Thereupon a memorandum was prepared by Cowles' attorney, as follows:

"Dated March ———, 1892.

Written notice waived by both parties.

Feed Store and Dady account to go to McKee at face value.
Commission        "        "    Cowles    "        "

Insurance on plant contributed by McKee and the plant remaining to go to McKee at $10,000.

Cowles to have his $10,000.

Balance to be divided according to the books."

The memorandum was then taken by McKee to submit to his attorney, who advised the preparation of a more formal and specific agreement, but it does not appear that anything more formal or specific was ever arrived at, nor that the memorandum itself, so far as it went, was ever repudiated by McKee. Indeed, it is clear from the pleadings of the parties that an agreement to dissolve was then made, and that the only objection to the memorandum is that it was "meager and most informal."

Immediately after this memorandum was made, which seems to have been done on April 12, 1892, although with reference to an earlier date for its taking effect from, McKee took possession of all that remained of the elevator plant and always thereafter continued to retain it as his individual property, and the insurance money was likewise turned over to him and has ever since been kept by him.

McKee v. Cowles.

Negotiations looking to a complete settlement ensued, but there was a failure to agree upon who should state the accounts of the parties from the partnership books, and on June 23, 1892, Cowles filed his bill for an accounting and adjustment of the partnership affairs. Upon the pleadings, and the evidence taken before the master, and his report, the court decreed, among other things, that the partnership was dissolved on March 24, 1892, by the agreement of dissolution made April 12, 1892, and that in pursuance of the memorandum, above quoted, what was left of the elevator and plant, together with the insurance money, was turned over to and accepted by McKee at the agreed price of $10,000, and that he was chargeable in the settlement with said $10,000.

It was stipulated by the parties that the only questions to be considered on this appeal are: "The meaning and effect of the articles of partnership; whether any settlement of the partnership affairs in whole or in part was made by the parties; and if any settlement was made what it was, and its effect;" but there is in substance no controversy except whether McKee should be charged with the sum of $10,000 for the elevator plant and insurance money, as was done by the decree.

The articles provided that the partnership might be terminated at any time after thirty days notice of a desire to that effect should be given by either party, and in case of its termination the property contributed by McKee should be taken back by him at the price of $10,000. There is no provision covering the contingency, which in this case happened, of a destruction of the property by fire, except that it should be restored at the expense of the firm.

But in the negotiations that followed, the memorandum recited in the decree, and above quoted, was made, wherein it is stated: "Insurance on plant contributed by McKee and the plant remaining to go to McKee at $10,000;" and McKee under the terms of that memorandum actually took and retained the plant and insurance money.

The words of the memorandum are plain, and they were

supplemented by the actual taking by McKee of the insurance money and all that remained of the plant.

It is no objection to the memorandum that it left the ascertaining of the true balance to be determined from the partnership books. It could probably be determined in no other way. But as to the price at which the plant and insurance money should be taken it was certain, and a court should not refine away the plain and obvious meaning of what was expressed, in order merely to gratify its sense of what would have been a more equitable agreement by the parties.

None of the negotiations that ensued between the parties appear to have in any way called in question the settlement so made as to the elevator plant and insurance money; and it does not appear that it was until the bill for an accounting was filed that any question concerning the finality of that matter was raised.

The subsequent controversies prior to the beginning of that suit seem to have been confined entirely to the methods to be employed in stating the accounts from the books.

From a careful examination of the pleadings and the evidence, we think the decree was right in every respect in which it is challenged, and it will accordingly be affirmed.